**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CLARE BRONFMAN, | : | |
| *Petitioner-Plaintiff,* | : | |
| | : | |
| v. | : | No. 3:23-cv-619 (JAM) |
| | : | |
| TIMETHEA PULLEN, et al., | : | June 9, 2023 |
| *Respondents-Defendants.* | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**RESPONSE TO SHOW CAUSE ORDER AND MOTION TO DISMISS**

# Table of Contents

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... ii

BACKGROUND .......................................................................................................... 2

I.     LEGAL BACKGROUND ..................................................................................... 2

      A.   Statutory and Regulatory Background ......................................................... 2

      B.   Constitutional Background ........................................................................... 4

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................... 5

III.   PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS ................................... 6

STANDARD OF REVIEW ......................................................................................... 8

I.     Failure to State a Claim ......................................................................................... 8

II.    Habeas Corpus Review ........................................................................................ 8

ARGUMENT ............................................................................................................... 9

I.     The case must be dismissed because the Court lacks jurisdiction over Petitioner. ................. 9

      A.   The Court lacks habeas jurisdiction because Petitioner was not incarcerated within the District of Connecticut when she filed her petition. .................................................... 10

      B.   The Court lacks personal jurisdiction over the proper habeas respondent, Andy Cruz, the Warden of FDC Philadelphia, and venue is improper. ............................................. 11

II.    The case must be dismissed because Petitioner failed to exhaust her administrative remedies. .................................................................................................................. 13

      A.   Ruling that Petitioner failed to exhaust is appropriate based on the pleadings as well as the facts. ................................................................................................................... 15

      B.   The exhaustion requirement should not be excused. ................................ 16

III.   The petition fails to state a habeas claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). .................................................................................................................. 17

      A.   Petitioner has no liberty interest in her Management Variable or place of incarceration. ......................................................................................................................... 17

      B.   Petitioner also has failed to state a claim under the Accardi Doctrine. ...................... 21

IV.  There is no basis for ordering the other requested relief. ................................... 22

CONCLUSION ........................................................................................................... 24

# Table of Authorities

Federal Cases

*Anderson v. Williams*,
No. 3:15-cv-1364 (VAB), 2017 WL 855795 (D. Conn. Mar. 3, 2017) ...................... 3, 4, 8, 15
*Arevalo-Guasco v. Dubois*,
788 F. App'x 25 (2d Cir. 2019) ....................................................................... 10
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................ 8
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................ 8
*Braden v. 30th Judicial Circuit Court of Kentucky*,
410 U.S. 484 (1973) ....................................................................................... 12
*Byars v. Ponce*,
No. CV 18-1486-GW(JC), 2018 WL 6190329 (C.D. Cal. July 25, 2018) ............... 3
*Cardoza v. Pullen*,
No. 3:22-cv-591 (SVN), 2022 WL 3212408 (D. Conn. Aug. 9, 2022) ................... 21
*Carmona v. BOP*,
243 F.3d 629 (2d Cir. 2001)........................................................................... 8, 13
*Chambers v. United States*,
106 F.3d 472 (2d Cir. 1997)............................................................................. 8
*Clarry v. United States*,
85 F.3d 1041 (2d Cir. 1996)............................................................................ 21
*Dailey v. Pullen*,
No. 3:22-cv-1121 (SRU), 2023 WL 3456696 (D. Conn. May 15, 2023) ............... 10, 11, 12
*DiMartino v. Sage*,
No. 3:21-cv-498 (KAD), 2022 WL 124308 (D. Conn. Jan. 13, 2022) ................... 14
*Donato v. Pullen*,
No. 3:22-cv-640 (JAM), 2023 WL 1967340 (D. Conn. Feb. 13, 2023) ................. 13, 15, 16
*Emery v. Pullen*,
No. 3:22-cv-1003 (SVN), 2023 WL 348114 (D. Conn. Jan. 20, 2023).................. 16
*Ex parte Endo*,
323 U.S. 283 (1944)........................................................................................ 13
*Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*,
No. 19-1778, 2020 WL 1320886 (2d Cir. Mar. 20, 2020) ................................... 21
*Fields v. Warden of Fed. Corr. Inst.-Bennettsville*,
No. 5:20-cv-1101 (SAL) (KDW), 2020 WL 8620171 (D.S.C. Dec. 21, 2020)....... 21
*Gooden v. Gonzales*,
162 Fed. App'x 28 (2d Cir 2005)...................................................................... 12
*Gotiangco v. Danbury*,
No. 3:22-cv-479 (JAM), 2022 WL 7584716 (D. Conn. Sept. 16, 2022)............... 13, 14
*Green v. Armstrong*,
189 F.3d 460 (2d Cir. 1999)............................................................................ 4, 20
*Hewitt v. Helms*,
459 U.S. 460 (1983)........................................................................................ 19

*Jiminian v. Nash*,
    245 F.3d 144 (2d Cir. 2001)..................................................................................................... 8
*Jones v. Smith*,
    720 F.3d 142 (2d Cir. 2013)................................................................................................... 14
*Kerry v. Din*,
    135 S. Ct. 2128 (2015) ........................................................................................................... 18
*Lasorsa v. Menifee*,
    182 F.3d 900 (2d Cir. 1999)..................................................................................................... 9
*LaSorsa v. Spears*,
    2 F. Supp. 2d 550 (S.D.N.Y. 1998) ........................................................................................ 9
*Lederman v. New York City Dep't of Parks & Recreation*,
    731 F.3d 199 (2d Cir. 2013)................................................................................................... 17
*Marti v. Nash*,
    No. Civ.A. 05–2344(JBS), 2006 WL 840397 (D.N.J. Mar. 27, 2006) ................................... 19
*McCarthy v. Madigan*,
    503 U.S. 140 (1992)............................................................................................................... 16
*Meachum v. Fano*,
    427 U.S. 215 (1976)............................................................................................................... 19
*Middleton v. Schult*,
    299 Fed. App'x 94 (2d Cir. 2008)......................................................................................... 10
*Montanye v. Haymes*,
    427 U.S. 236 (1976)............................................................................................................... 18
*Moody v. Daggett*,
    429 U.S. 78 ............................................................................................................... 4, 18, 19
*Olim v. Wakinekona*,
    461 U.S. 238 (1983)............................................................................................................... 19
*Osorio v. Gallo*,
    No. 3:19-cv-151 (VAB), 2020 WL 1531300 (D. Conn. Mar. 31, 2020)................................ 21
*Pack v. Warden, Fed. Corr. Inst. at Ray Brook*,
    No. 9:11-cv-908 (LEK/RFT), 2014 WL 2895432 (N.D.N.Y. June 26, 2014) ........................ 19
*Pastrana v. Nalley*,
    No. 9:03-cv-302 (LEK/RFT), 2007 WL 952061 (N.D.N.Y. Mar. 29, 2007) ........................... 4
*Preiser v. Rodriquez*,
    411 U.S. 475 (1973)............................................................................................................... 14
*Prins v. Coughlin*,
    76 F.3d 504 (2d Cir. 1996)..................................................................................................... 19
*Pugliese v. Nelson*,
    617 F.2d 916 (2d Cir. 1980)........................................................................................ 2, 4, 19, 20
*Respass v. Murphy*,
    No. 3:10-cv-318 (DJS), 2014 WL 4798537 (D. Conn. Sept. 26, 2014) ................................. 19
*Rodriguez-Leon v. Zickefoose*,
    Civ. Case No. 11-1172 (RBK), 2012 WL 32924 (D.N.J. January 3,2012) ............................ 19
*Rogers v. Shartle*,
    No. 4:07-cv-2598, 2007 WL 3355128 (N.D. Ohio Nov. 9, 2007).......................................... 17
*Rubbo v. Pullen*,
    No. 3:21-cv-109 (OAW), 2022 WL 4080485 (D. Conn. Sept. 6, 2022) ................................ 13

*Rumsfeld v. Padilla*,
  542 U.S. 426 (2004)..............................................................................passim
*Saleh v. Young*,
  No. 5:19-cv-468 (FWV), 2021 WL 1758711 (S.D.W. Va. May 4, 2021)................... 11, 19, 22
*Sandin v. Conner*,
  515 U.S. 472 (1995)...................................................................................... 4, 20
*Skaftouros v. United States*,
  667 F.3d 144 (2d Cir. 2011).............................................................................. 10
*South v. Licon-Vitale*,
  No. 3:19-cv-1763 (VLB), 2020 WL 3064320 (D. Conn. 2020)............................... 15
*Spiegelmann v. Erfe*,
  No. 3:17-cv-2069 (VLB), 2018 WL 1582549 (D. Conn. Mar. 29, 2018) ................... 8
*Swarthout v. Cooke*,
  562 U.S. 216 (2011)........................................................................................ 18
*Tapia v. United States*,
  564 U.S. 319 (2011)........................................................................................ 2
*Taylor v. Levesque*,
  246 Fed. App'x 772 (2d. Cir. 2007)..................................................................... 19
*Tompkins v. Pullen*,
  No. 3:22-cv-339 (OAW), 2022 WL 3212368 (D. Conn. Aug. 9, 2022).................... 22
*U.S. ex rel. Scranton v. State of New York*,
  532 F.2d 292 (2d Cir. 1976)............................................................................. 13
*United States v. Kanagbou*,
  726 Fed. App'x 21 (2d Cir. 2018)...................................................................... 2
*Vega v. Lantz*,
  596 F.3d 77 (2d Cir. 2010)............................................................................... 23
*Wilkinson v. Austin*,
  545 U.S. 209 (2005)........................................................................................ 4
*Wilkinson v. Dotson*,
  544 U.S. 74 (2005)......................................................................................... 14

State Cases

*Anthony A. v. Commissioner of Correction*,
  326 Conn. 668 (2017) .................................................................................... 23

Federal Statutes

18 U.S.C. § 3621............................................................................................. 2
18 U.S.C. § 3625............................................................................................. 2, 9
18 U.S.C. § 3626............................................................................................. 14
18 U.S.C. § 4081............................................................................................. 2, 18
28 U.S.C. § 2241............................................................................................. 8, 9, 13
28 U.S.C. § 2243............................................................................................. 9
42 U.S.C. § 1997e............................................................................................ 14

Federal Rules

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 8
Fed. R. Civ. P. 41(a)(ii)............................................................................................................6

Federal Regulations

28 C.F.R. Part 542...........................................................................................................15, 17

This case challenges the Federal Bureau of Prison's (BOP) execution of Petitioner's sentence—namely, how the BOP determined Petitioner's custodial "Management Variable," and the location where she is incarcerated. Petitioner Clare Bronfman alleges that the BOP violated the "spirit" of the stipulation it entered to resolve her prior petition for habeas relief, in *Bronfman v. Pullen*, 3:22-cv-838 (D. Conn.) (*Bronfman I*), and that it has retaliated against her by changing her custodial location. Petitioner's habeas petition, ECF No. 1, requests various forms of relief, including that she be transferred away from her current place of incarceration in Pennsylvania, and assigned to a specific BOP facility in Connecticut.

Petitioner's habeas petition should be dismissed because (1) this Court lacks jurisdiction over her claim because she must bring suit in the jurisdiction where she is incarcerated against the warden of the facility where she is incarcerated; not in the jurisdiction where she was previously incarcerated against a warden who has no control over Petitioner; (2) it appears that Petitioner has failed to exhaust her administrative remedies; (3) even if the first two flaws did not foreclose relief, the Petition is futile because Petitioner has no liberty interest in her Management Variable, which is wholly within BOP's discretion.[1]

Pursuant to the Court's Show Cause Order, ECF 13, the Rules Governing Section 2254 cases in the United States District Courts, and Federal Rule of Civil Procedure 12(b)(6), Richard Stover, in his official capacity as Warden of FCI Danbury; the Federal Bureau of Prisons; Bryan Antonelli, in his official capacity as the Acting Regional Director of the Federal Bureau of Prisons' Northeast Region; and Colette Peters, in her official capacity as Director of the Federal

---

[1] Because Petitioner has not perfected her claim through the administrative process, BOP has not yet had the opportunity to review and respond to her claim on the merits through standard channels. Therefore, BOP declines to articulate in this filing (for the first time) its position respecting to the substance of Petitioner's claim that her Management Variable is incorrect.

Bureau of Prisons (collectively, "Respondent" or "Respondents"), respectfully submits this memorandum of law in support of her motion to dismiss the instant Petition for Writ of Habeas Corpus, ECF No. 1, and to deny the Motion for Writ of Habeas Corpus, ECF No. 7.

## BACKGROUND

### I.   LEGAL BACKGROUND

#### A.   Statutory and Regulatory Background

Under Title 18 U.S.C. §§ 4081 and 4082, "the Attorney General has complete and absolute discretion with respect to the incarceration, classification and segregation of lawfully convicted prisoners." *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980). "This broad discretionary authority has been delegated by the Attorney General to the Bureau of Prisons." *Id.* at 924 n.5 (citing 28 C.F.R. §§ 0.95, 0.96).

The Bureau of Prisons (BOP) is responsible for determining the placement of prisoners. 18 U.S.C. § 3621[2]; *see also Tapia v. United States*, 564 U.S. 319, 331 (2011) (observing that the power to determine an inmate's programing and place of imprisonment "rests with the BOP"); *United States v. Kanagbou*, 726 Fed. App'x 21, 25 n.1 (2d Cir. 2018) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence"; citing 18 U.S.C. § 3621(b)). BOP has created policies and procedures to guide it in carrying out its statutory mandate under § 3621. Under BOP's system, inmates are placed in "the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society." U.S. Dept. of Justice, Fed. Bureau of Prisons,

---

[2] 18 U.S.C. § 3621 appears in Subchapter C, Imprisonment, of Title 18, Part II, Chapter 229. Notably, 18 U.S.C. § 3625, which also appears in Subchapter C, provides that the Administrative Procedure Act is inapplicable to "the making of any determination, decision, or order under this subchapter."

Program Statement No. P5100.08, Inmate Security Designation and Custody Classification, p. 1 ¶ 1 (Sept. 12, 2006) (PS 5100.08).[3] According to PS 5100.08, the "security designation" or "security level" of each inmate is based on several factors, including records from the inmate's sentencing, background information from the Judgment and reports completed by the Probation Office, the inmate's history of escapes or attempts, and Public Safety Factors (PSFs) designated by Bureau officials. *See id.* at Ch. 4, p. 5-16; *see also Anderson v. Williams*, No. 3:15-cv-1364 (VAB), 2017 WL 855795, at *1 (D. Conn. Mar. 3, 2017) (analyzing and applying BOP's policy statement regarding custody).

The BOP also designates the "Management Security Level" of each prisoner. *Anderson*, 2017 WL 855795, at *2. As explained by the Federal District Court for the Central District of California in *Byars v. Ponce*,[4] the BOP Designation and Sentence Computation Center Administrator may assign a "Management Security Level," when a particular inmate is placed in an institution with a security level that is inconsistent with the inmate's scored security level because of some "Management Variable" (e.g., a judicial recommendation of a specific institution or program, a particular institution's proximity to the inmate's "release residence," the level of overcrowding at an institution with a matching security level, the inmate's need for special monitoring or separation from others, the inmate's medical or psychiatric needs, as well as other greater/lesser security concerns "not adequately reflected in the classification scheme"). *Byars v. Ponce*, No. CV 18-1486-GW(JC), 2018 WL 6190329 (C.D. Cal. July 25, 2018), at *1 (quoting Program Statement 5100.08, at Ch. 2, p. 3, & Ch. 5), *report and recommendation adopted*, No. CV 18-1486 GW(JC), 2018 WL 6308104 (C.D. Cal. Nov. 30, 2018).

---

[3] *Available at* https://www.bop.gov/policy/progstat/5100_008.pdf.

[4] One of the exceedingly few federal court opinions available on Westlaw that references the term "Management Security Level" or "Management Variable."

3

The MSL "takes precedence over . . . the scored security level and the application of Public Safety Factors" to determine an inmate's placement. PS 5100.08 at Ch. 5, p. 2. MSLs include "Work Cadre," which applies to inmates allowed to perform work outside the perimeter of the institution, and "Medical," which applies to inmates who are designated to certain facilities based on their medical needs. *Id.* at Ch. 5, p. 4. The BOP can also apply the MSL designations of "lesser security" and "greater security," which override an inmate's security classification. *Id.* at p. 5; *see also Anderson*, 2017 WL 855795, at *2.

### B.   Constitutional Background

The "Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In the case of a prisoner, a "liberty interest" is freedom from restraint which "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 223 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Supreme Court has "rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right." *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). In the case of classifications of inmates, "Congress has given federal prison officials full discretion to control these conditions of confinement . . . ." *Id.* Thus, court consistently hold that prisoners have no constitutional right to any specific classification. *See, e.g.*, *id.*; *Green v. Armstrong*, 189 F.3d 460, 460 (2d Cir. 1999); *Pugliese*, 617 F.2d at 923; *Pastrana v. Nalley*, No. 9:03-cv-302 (LEK/RFT), 2007 WL 952061, at *6 (N.D.N.Y. Mar. 29, 2007) ("The Supreme Court has held, and the Second Circuit has affirmed, that prisoners do not have a liberty interest under the Federal Constitution in 'prisoner classifications and eligibility for rehabilitative programs in the federal system.'").

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was arrested by federal agents on July 24, 2018, and subsequently charged in a multi-count indictment. *Bronfman v. Pullen*, No. 3:22-cv-838, Am. Pet. ¶ 13, ECF No. 32 (D. Conn.) (*Bronfman I*). On April 19, 2019, Petitioner pled guilty to two charges: Conspiracy to Conceal and Harbor Aliens for Financial Gain; and Fraudulent Use of a Means of Identification. *Id.* ¶ 13 (citing 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(I)(B)(i), and 18 U.S.C. § 1028(a)(7)). After sentencing, Petitioner entered the custody of the BOP and the Federal Designation and Sentencing Computation Center determined Petitioner's initial custody classification and security designation. *See Bronfman I*, ECF No. 1-3 at 1. Petitioner was initially incarcerated at the Federal Detention Center in Philadelphia, Pennsylvania (FDC Philadelphia). *Bronfman I*, Petition ¶ 36. She later was transferred to FCI Danbury at the Federal Satellite Low facility. *See id.* ¶ 8.

On July 5, 2022, Petitioner filed an initial Section 2241 habeas corpus petition in this Court challenging her custody classification with respect to the BOP's application of a "Sex Offender" PSF. *Bronfman I*, Petition, ECF No. 1. At the time of that petition, Petitioner was incarcerated at FCI Danbury. *Bronfman I*, Petition ¶¶ 7-8. Following oral argument in October 2022 on BOP's motion to dismiss, *Bronfman I*, ECF Nos. 18 & 22-1, Petitioner amended her petition to challenge the same PSF on an alternate legal theory. *See Bronfman I*, Am. Petition, ECF No. 32.

In her initial and amended petitions, Petitioner claimed that she has exhausted her administrative remedies respecting grieving her PSF. *Bronfman I*, Petition ¶¶ 37-46; *Bronfman I*, Am. Petition ¶¶ 37-46. Respondent did not challenge that Petitioner had exhausted her initial claim regarding the PSF. *See Bronfman I*, Mem. of Law in Supp. of Response to Show Cause Order & Mot. to Dismiss at 9, ECF No. 22-1.

5

Before the Court had made any ruling on the merits of the initial habeas petition, the parties resolved their dispute. Petitioner agreed that, as of November 9, 2022, her BOP classification no longer included the "Sex Offender" PSF. *Bronfman I*, Stipulation of Dismissal at 1, ECF No. 40. Consequently, on November 16, 2022, the parties agreed to dismiss her petition without prejudice pursuant to Fed. R. Civ. P. 41(a)(ii). *Id.* The parties did not enter any settlement agreement on the docket. The Court approved the stipulation on November 21, 2022, and the case was closed. *Bronfman I*, ECF No. 41.

Petitioner was later transferred to FDC Philadelphia, where she arrived on March 29, 2023. Exh. 1, C. Magnusson Decl. ¶ 3 (June 2, 2023); *Bronfman v. Pullen*, 3:23-cv-619 (JAM), Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, at ¶ 26, ECF No. 1 (D. Conn., filed May 12, 2023) (*Bronfman II*) (Petition).

## III.    PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS

On May 12, 2023, Petitioner filed the instant petition. *Bronfman II*, Petition, ECF No. 1. Petitioner's new habeas petition does not append any new administrative grievance materials of the sort attached as Exhibits E-F and H to her initial petition. *Compare Bronfman II*, Petition ¶ 64, ECF No. 1, *with Bronfman I*, Petition ¶¶ 39, 42, 46; *see also Bronfman I*, ECF Nos. 1-3, 1-4 & 1-6.

The instant habeas petition challenges BOP's application of a Greater Security Management Variable to Petitioner's incarceration. Petition ¶ 7. Petitioner claims this Management Variable was added to her file only after her initial habeas petition, and indeed, in retaliation for her having filed that petition. *Id.* ¶¶ 6, 8.

The petition further alleges that the BOP "fraudulently induced Ms. Bronfman into withdrawing from the Female Integrated Treatment ('FIT') program" at FCI Danbury. Petition ¶ 9. According to Petitioner, her participation in the FIT program created a "program hold" on

her file, which prevented her from being transferred from FCI Danbury, a low-security facility, to the adjacent institution, the Danbury Camp, which is a minimum-security camp. Petition ¶¶ 9-10. Allegedly, Petitioner preferred the possibility of a designation to the Camp and therefore withdrew from the FIT program in order to remove the "program hold." Petition ¶¶ 10-11. Petitioner further alleges that, upon her withdrawal from the FIT program, rather than transfer her to the Camp, the BOP assigned her the Management Variable and thereby justified moving her to FDC Philadelphia. Petition ¶ 11. Petitioner explicitly, but without citation to any evidence apart from her speculation "[o]n information and belief," claims that BOP applied the Management Variable and moved Petitioner's place of incarceration "in an attempt to avoid the jurisdiction of this court and retaliate against" Petitioner. Petition ¶¶ 11, 15-16, 19, 94.

The petition includes the following varied relief in its Prayer For Relief[5]: (1) that the Court order the removal of a Greater Security Management Variable from Petitioner's BOP file; (2) that BOP be ordered to transfer Petitioner to a specific, minimum security prison facility; (3) that BOP's Director, Colette Peters, be made the testify before the Court "regarding the circumstances of the application of the Management Variable to [Petitioner's] file and of [Petitioner's] transfer to FDC Philadelphia"; (4) an order holding Respondents in contempt; (5) an order holding that Respondents acted arbitrarily and capriciously by placing a Management Variable on Petitioner's file; (6) assignment to the current, presiding Federal District Court Judge; and (7) other just and proper relief. Petition at 28-29.

---

[5] Petitioner's motion for an order show cause, ECF No. 7, appears to relate to the initial habeas petition in *Bronfman I*. It requests relief in the form of removing a PSF from Petitioner's BOP file, *id.* ¶ 2, despite that she does not allege her current file has any PSF.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), Respondent moves to dismiss Petitioner's Writ of Habeas Corpus for failure to state a claim.

## I.      Failure to State a Claim

The "Court reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6)." *Spiegelmann v. Erfe*, No. 3:17-cv-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018); *see also Anderson*, 2017 WL 855795, at *5-6 (reviewing motion to dismiss Section 2241 petition pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)).

The Supreme Court's basic plausibility standard requires the petition to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.     Habeas Corpus Review

The Court has jurisdiction under 28 U.S.C. § 2241 to address the execution of a prisoner's sentence. *See Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.") (citing *Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997)); *see also Carmona v. BOP*, 243 F.3d 629, 632 (2d Cir. 2001) ("A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution

subsequent to his conviction."). Habeas relief may be available when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1).[6]

## ARGUMENT

### I.     The case must be dismissed because the Court lacks jurisdiction over Petitioner.

The case must be dismissed because Petitioner was not incarcerated in the District of Connecticut at the time that she filed her petition; the Warden whom she names as Respondent does not have custody of Petitioner; the Warden who does have custody of Petitioner is not within the jurisdiction of this Court; and venue is improper pursuant to § 2241.

A writ of habeas corpus must be "directed to the person having custody of the person detained," 28 U.S.C. § 2243, and district courts may only grant habeas relief "within their respective jurisdictions," 28 U.S.C. § 2241(a). As a result, "[t]he question whether [a district court] has jurisdiction over [a] habeas petition breaks down into two related subquestions. First, who is the proper respondent to that petition? And second, does [the district court] have jurisdiction over him or her?" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).

---

[6] "[I]t is important to note that the nature of [the] Court's review on habeas is different from what would be available under the APA." *LaSorsa v. Spears*, 2 F. Supp. 2d 550, 558 (S.D.N.Y. 1998) (Sotomayor, J.), *aff'd sub nom. Lasorsa v. Menifee*, 182 F.3d 900 (2d Cir. 1999). "Were the APA's judicial review provisions applicable to BOP's decision . . . this Court would in effect be sitting as an appeals court, reviewing the record of the BOP proceedings and determining whether, on that record alone, BOP's decision was supported by substantial evidence." *Id.* at 558–59. However "the APA is expressly made inapplicable to the review of BOP's decision by 18 U.S.C. § 3625." *Id.* at 559. Here, "even if BOP's stated reasoning in its administrative process was flawed, as long as BOP's arguments to this Court on the habeas petition are sufficient to demonstrate the legality of their position, the habeas petition must be denied." *Id.*

"Two default rules generally apply." *Dailey v. Pullen*, No. 3:22-cv-1121 (SRU), 2023

WL 3456696, at *2 (D. Conn. May 15, 2023).[7] One, the proper respondent is generally "the

warden of the facility where the prisoner is being held." *Padilla*, 542 U.S. at 435. Two, the

proper venue is generally the district in which the petitioner is confined. *Id.* at 447.

> **A.    The Court lacks habeas jurisdiction because Petitioner was not incarcerated
>         within the District of Connecticut when she filed her petition.**

This case differs from *Dailey* in a critical respect. There, the Court recognized that,

because the Second Circuit recognizes habeas jurisdiction is "not jurisdictional in the sense of a

limitation on subject matter jurisdiction," *Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d

Cir. 2011) (quoting *Padilla*, 542 U.S. at 451 (Kennedy, J. concurring)), habeas jurisdiction

attaches on the initial filing for habeas relief, and a district court retains jurisdiction even when a

petitioner is transferred after filing to the custody of a different custodian in a different judicial

district. *See Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 26 n.1 (2d Cir. 2019) (summary order);

*Middleton v. Schult*, 299 Fed. App'x 94, 95 n.1 (2d Cir. 2008) (summary order).

Here, when Petitioner filed her prior petition on July 5, 2022, in *Bronfman I*, she was

confined at FCI Danbury in Danbury, Connecticut. *Bronfman I*, ECF No. 1. That petition

properly named as respondent Petitioner's then-custodian, Warden Pullen of FCI Danbury, in her

official capacity. *Id.* at 1. Petitioner also properly filed the prior petition in the judicial district in

which FCI Danbury is located, the District of Connecticut. In contrast, when Petitioner filed the

---

[7] The section excerpts extensively from the District Court's recent decision in *Dailey v. Pullen*, No. 3:22-cv-1121 (SRU), 2023 WL 3456696, at *2-4 (D. Conn. May 15, 2023), which provided a fulsome analysis of the jurisdictional issues presented. Because the excerpts are so extensive, and for ease of reading, we sometimes forgo pin cites to the *Dailey* decision. Although *Dailey's* recitation of the law is helpful to this Court's analysis, it is factually distinguishable and provides a useful counterpoint to analyzing the petition here.

instant petition on May 12, 2023, in *Bronfman II*, she was confined in the Eastern District of Pennsylvania at FDC Philadelphia. Petition ¶ 11, ECF No. 1.

Although this Court unquestionably had habeas jurisdiction over the *Bronfman I* petition, respondent disputes that the Court has jurisdiction over the *Bronfman II* petition. This is different than in *Dailey*, where the Court obtained jurisdiction based on the petitioner's initial place of incarceration, and retained habeas jurisdiction although BOP transferred the petitioner during the pendency of the habeas. *Dailey*, 2023 WL 3456696, at *2; *see Padilla*, 542 U.S. at 434-35.

### B. The Court lacks personal jurisdiction over the proper habeas respondent, Andy Cruz, the Warden of FDC Philadelphia, and venue is improper.

This case also implicates the second issue analyzed in *Dailey*.[8] Under the first of the two aforementioned default rules, the "immediate physical custodian rule," a habeas petitioner challenging her "present physical confinement" generally should file her section 2241 habeas petition against "the 'person' with the ability to produce the prisoner's body before the habeas court," *i.e.*, the warden of the facility in which she is being held. *Padilla*, 542 U.S. at 434-35. Challenges to a "Management Variable" and the prisoner's place of incarceration—such as Petitioner raises here—are challenges to present physical custody, subject to the immediate physical custodian rule. *See, e.g.*, *Saleh v. Young*, No. 5:19-cv-468 (FWV), 2021 WL 1758711, at *2 (S.D.W. Va. May 4, 2021) (addressing "Management Security Level" and "Management Variable" and analyzing whether warden had discretion to determine petitioner's "placement and classification"). Therefore, Petitioner's petition must be directed to Andy Cruz, the Warden of the facility in which she is presently confined. *See Dailey*, 2023 WL 3456696, at *2.

---

[8] In that case, the Court found that, even though it retained jurisdiction over the action, because the petitioner was "no longer in the custody of Pullen but is instead in the custody of a warden located outside of this judicial district," the transfer presented "other (related) issues of habeas jurisdiction" that required analysis. *Dailey*, 2023 WL 3456696, at *2.

Under the second of the two default rules, the "territorial jurisdiction rule," the court "issuing the writ [must] have jurisdiction over the custodian." *Padilla*, 542 U.S. at 442. This is because a writ of habeas corpus operates upon the prisoner's custodian, not on the prisoner. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95 (1973). "Although neither the Supreme Court nor Second Circuit has fully-articulated the meaning of the phrase 'within their respective jurisdictions' in section 2241, the interplay of the two default rules appears to require that a district court have personal jurisdiction over the petitioner's custodian to issue the mandamus sought." *Dailey*, 2023 WL 3456696, at *3. Thus, when a petitioner challenges her present physical confinement, "the district of confinement is synonymous with the district court that has territorial jurisdiction over the proper respondent," or her immediate physical custodian. *Padilla*, 542 U.S. at 444 (emphasis omitted); *Dailey*, 2023 WL 3456696, at *3.

Here, the petition seeks an order from this Court, *inter alia*, directing Petitioner's custodian to remove the Management Variable and transfer her out of FDC Philadelphia and back to FCI Danbury, specifically to the minimum-security Camp. Petition at 28 (Prayer for Relief (1) and (2)). Thus, even if the Court had obtained initial habeas jurisdiction over the petition in *Bronfman II*, which Respondent disputes, Petitioner's location outside of the district raises issues analogous to personal jurisdiction and venue. *See Gooden v. Gonzales*, 162 Fed. App'x 28, 29 (2d Cir. 2005) (summary order) (quoting *Padilla*, 542 U.S. at 452 (Kennedy, J., concurring), for the proposition that "the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules"); *Dailey*, 2023 WL 3456696, at *3.

For the duration of this petition, Petitioner has been in the custody of Andy Cruz, the Warden of FDC Philadelphia; therefore, the Warden of FCI Danbury is not the warden of the

facility in which Petitioner is currently confined. Thus, the petition properly must seek relief

from a warden who is outside the territorial jurisdiction of this Court.[9]

Here, Petitioner was never in the jurisdiction of the District Court during the pendency of

this petition. Because the Court lacks jurisdiction over the Petitioner's present Warden and venue

is improper, the petition must be dismissed.

## II.   The case must be dismissed because Petitioner failed to exhaust her administrative remedies.

A federal habeas petitioner's obligation to exhaust administrative remedies arises from

two separate sources. First, federal courts require that prisoners exhaust administrative remedies

before seeking judicial relief pursuant to 28 U.S.C. § 2241. *See Carmona*, 243 F.3d at 634

(prisoner must exhaust administrative remedies before challenging loss of good time credits);

*U.S. ex rel. Scranton v. State of New York*, 532 F.2d 292, 294 (2d Cir. 1976) ("While 28 U.S.C.

Section 2241 does not by its own terms require the exhaustion of state remedies as a prerequisite

to the grant of federal habeas relief, decisional law has superimposed such a requirement in order

to accommodate principles of federalism."); *Donato v. Pullen*, No. 3:22-cv-640 (JAM), 2023

WL 1967340, at *1 (D. Conn. Feb. 13, 2023) (ruling petitioner had not exhausted administrative

remedies, despite petitioner's contrary claim of exhaustion); *Gotiangco v. Danbury*, No. 3:22-cv-

---

[9] Courts differ differed with respect to whether and in what way a petitioner's post-petition transfer affects a court's authority over such a petition. That question is not implicated here because Petitioner was not transferred during the pendency of her petition. Even if she had been, it does not change that the Court lacks territorial jurisdiction over the Warden "who has legal authority to effectuate" Petitioner's release. *Padilla*, 542 U.S. at 441 (ruling that *Ex parte Endo*, 323 U.S. 283 (1944), only "stands for the . . . limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent **within its jurisdiction** who has legal authority to effectuate the prisoner's release.") (emphasis added); *see also, e.g.*, *Rubbo v. Pullen*, No. 3:21-cv-109 (OAW), 2022 WL 4080485, at *1 (D. Conn. Sept. 6, 2022) ("Petitioner is no longer confined in the District of Connecticut, and thus this court no longer has authority to grant him the relief he seeks.").

479 (JAM), 2022 WL 7584716, at *1 (D. Conn. Sept. 16, 2022) (dismissing habeas petition where petitioner did not assert that he had exhausted his administrative remedies).

Second, the Prison Litigation Reform Act (PLRA) states that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Gotiangco*, 2022 WL 7584716, at *1. The PLRA and its exhaustion regime apply to any "civil action with respect to prison conditions," which the statute broadly defines as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(g)(2); *see Jones v. Smith*, 720 F.3d 142, 145 n.3 (2d Cir. 2013) (recognizing application of PLRA to § 2241 petition challenging conditions of confinement); *DiMartino v. Sage*, No. 3:21-cv-498 (KAD), 2022 WL 124308, *3-6 (D. Conn. Jan. 13, 2022) (similar).

The Supreme Court has defined habeas claims "challenging the fact or duration of confinement in prison" to be those whose success would "would necessarily spell speedier release." *Wilkinson v. Dotson*, 544 U.S. 74, 75 (2005). Such claims, often characterized as "the core of habeas corpus," include challenges to the reason for a prisoner's confinement, their conviction or change, the length of their sentence, or a release determination based on good time credits. *See Preiser v. Rodriquez*, 411 U.S. 475, 485-87 (1973).

Under either exhaustion regime, or both, prisoners in BOP custody must exhaust their administrative remedies by completing the BOP's four-step Administrative Remedy Program, which involves (1) an attempt at informal resolution; (2) a written remedy request to the warden; (3) an appeal to the regional director; and (4) an appeal to the BOP general counsel's office. *See*

14

28 C.F.R. Part 542, Subpart B (Administrative Remedy Program); *South v. Licon-Vitale*, No. 3:19-cv-1763 (VLB), 2020 WL 3064320, at *1 (D. Conn. 2020); *Anderson*, 2017 WL 855795, at *4. A habeas petition that raises a new legal basis for the relief sought, which was not addressed through a prisoner's BP-8 or BP-9, is not exhausted. *See Donato*, 2023 WL 1967340, at *3 (finding petitioner failed to exhaust claim for release that was based on novel legal theory).

### A.   Ruling that Petitioner failed to exhaust is appropriate based on the pleadings as well as the facts.

Petitioner admits that she has not exhausted these administrative remedies with respect to her new claims; her petition only alleges exhaustion with respect to disputing the application of a Public Safety Factor, which has since been removed. Petition ¶ 64 (alleging exhaustion with respect to the PSF); *id.* ¶ 6 (conceding the PSF has been removed).[10]

Additionally, the facts demonstrate that Petitioner has failed to exhaust claims related to her Management Variable and/or her desire to be transferred from FDC Philadelphia to FCI Danbury. Specifically, the declaration of Cheryl Magnusson shows that Petitioner has not filed any administrative remedies since October 28, 2021, when she requested removal of the now-removed Public Safety Factor of "Sex Offender."[11] C. Magnusson Decl. ¶¶ 8-9 & Exh. A. Thus,

---

[10] Application of the Public Safety Factor was the subject matter of the properly-exhausted petition in *Bronfman I*, which was withdrawn, and which case is now closed. *See Bronfman I*, Petition ¶ 46, ECF No. 1; *Bronfman I*, Mem. of Law in Supp. of Response to Show Cause Order & Mot. to Dismiss at 9, ECF No. 22-1 ("Respondent does not challenge the Petition with respect to exhaustion."); *see also Bronfman I*, ECF Nos. 1-3, 1-4, 1-6.

[11] Like the present lawsuit, the October 28, 2021, administrative remedy request also sought transfer to the Camp at FCI Danbury. In *Bronfman I*, Petitioner alleged that such transfer had not occurred due to her Public Safety Factor. In contrast, the present petition alleges that the warden has not assigned Petitioner to her preferred place of incarceration for different reasons (retaliation, and the application of the management variable). Therefore, although the prior, exhausted request could be characterized as seeking some of the same relief as this petition, the prior request was based on a different legal theory and exhausting that claim does not suffice for Petitioner to have exhausted her present claim. *See Donato*, 2023 WL 1967340, at *3 (finding petitioner failed to exhaust claim for release that was based on novel legal theory).

the facts show that the Petitioner has not exhausted her administrative remedies, and the petition therefore should be dismissed.

### B.    The exhaustion requirement should not be excused.

A court has discretion to excuse the judicially-imposed (prudential) exhaustion requirement for federal prisoners (though, not the PLRA's exhaustion requirements, unless the remedies were not "available," which is not pleaded here). *See Emery v. Pullen*, No. 3:22-cv-1003 (SVN), 2023 WL 348114, at *4 (D. Conn. Jan. 20, 2023). It may do so for any of at least four reasons: that "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Id.*

None of these conditions are satisfied here, and indeed, Petitioner has not alleged facts suggesting that she seeks relief from exhaustion based on any of these exceptions.

Permitting the agency an opportunity to address her claims is in the interests of the parties and the Court, particularly (as here) in the absence of any circumstances weighing against allowing the administrative process to run its standard course. "Even if the BOP ends up denying administrative relief, exhaustion may create a record that would assist" the Court "with evaluating any renewed petition for writ of habeas corpus." *Donato*, 2023 WL 1967340, at *4 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) for the proposition that "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted" or, alternatively, that "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration"). For example, in *Rogers v. Shartle* (another of the few reported federal cases that reference "Management Security Level"), the Court analyzed the petitioner's claims (respecting

16

the application of a Management Variable), with the benefit of a detailed administrative denial

by the relevant warden (which the petitioner had properly exhausted). *Rogers v. Shartle*, No.

4:07-cv-2598, 2007 WL 3355128, at *1-2 (N.D. Ohio Nov. 9, 2007).[12]

### III. The petition fails to state a habeas claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Even if jurisdiction and exhaustion issues did not require dismissal, the petition should be

dismissed for failure to state a claim.

### A. Petitioner has no liberty interest in her Management Variable or place of incarceration.

Habeas relief is available for prisoners who allege a violation of the Constitution or laws

or treaties of the United States. Here, Petitioner asks the Court to order the BOP to remove her

Management Variable and to designate her to a specific BOP facility. But Petitioner has not

identified any statute nor Constitutional right that BOP has violated with respect to her detention.

Regarding her purported Constitutional rights, Petitioner has no liberty interest in her security

level, Management Variable, Management Security Level, custody classification, or place of

---

[12] Permitting BOP an opportunity to respond in writing through the administrative process would also likely moot the Petitioner's third request for relief, for an "order requiring Respondent/BOP Director Colette Peters to testify before this Court regarding the circumstances of the application of the Management Variable to Ms. Bronfman's file and of Ms. Bronfman's transfer to FDC-Philadelphia." Petition at 28. BOP Director Colette Peters is precisely the type of high-ranking government official who, if Petitioner were seeking to depose her, would have to "demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013). Petitioner cannot show exceptional circumstances requiring Director Peters' testimony; nor can Petitioner claim that it would be in the public interest for Director Peters to appear in Court to testify regarding Petitioner's claim when not even the regional counsel (who would review the administrative claim at step 3) nor BOP general counsel's office (who would review the administrative claim at step 4), *see* above at Argument II. (summarizing 28 C.F.R. Part 542, Subpart B (Administrative Remedy Program)), have had the standard administrative opportunity to review and/or provide information respecting an administrative claim.

confinement, and therefore has not established that the Respondent violated her rights under the Due Process clause.

The Fifth Amendment's Due Process Clause protects persons against "depriv[ations] of life, liberty, or property." U.S Const. Amend. V. To establish a violation of due process, a petitioner must demonstrate that he or she possessed a life, liberty or property interest, a government official deprived him of one of those interests, and the procedures provided prior the deprivation of that interest were constitutionally inadequate or insufficient. *See Kerry v. Din*, 135 S. Ct. 2128, 2132 (2015). "[I]t remains the case that no process is due if one is not deprived of 'life, liberty, or property.'" *Id.* (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam)).

The Supreme Court has concluded that a federal prisoner has no liberty interest "sufficient to invoke due process" in his or her "prisoner classification and eligibility for rehabilitative programs in the federal system." *Moody.* 429 U.S. at 88 n.9 ("We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. . . . Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

Thus, it is well-established that a federal inmate possesses no liberty interest arising from the Due Process Clause in a particular custody level, place of confinement, or Management

Security Level. *See, e.g.*, *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Hewitt v. Helms*, 459 U.S. 460, 466-67 (1983); *Moody*, 429 U.S. at 88 n.9; *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). *See also Pugliese*, 617 F.2d at 923; *Prins v. Coughlin*, 76 F.3d 504, 507 (2d Cir. 1996); *Taylor v. Levesque*, 246 Fed. App'x 772 (2d. Cir. 2007); *Saleh*, 2021 WL 1758711, at *2.

Because of this, Petitioner has no due process right to challenge the assignment to her of a Management Variable. *See Taylor*, 246 Fed. App'x at *1 ("It is well settled that prisoners generally do not have a protected liberty interest in classifications that impact their eligibility to participate in rehabilitative programs"); *Respass v. Murphy*, No. 3:10-cv-318 (DJS), 2014 WL 4798537, *2 (D. Conn. Sept. 26, 2014) ("The Supreme Court has held that federal prisoners have no protected interest in their classification that would invoke due process protections, because Congress has given federal prison officials full discretion to determine prisoner classifications") (internal quotations and citations omitted); *Pack v. Warden, Fed. Corr. Inst. at Ray Brook*, No. 9:11-cv-908 (LEK/RFT), 2014 WL 2895432, *2 (N.D.N.Y. June 26, 2014) ("a prisoner has no constitutional right to serve a sentence in any particular institution . . . because Congress has given federal prison officials full discretion to determine prisoner classifications") (cleaned up). *See also Marti v. Nash*, No. Civ.A. 05-2344(JBS), 2006 WL 840397, *3 (D.N.J. Mar. 27, 2006), *aff'd* 227 Fed. App'x 148, 2007 WL 1072969 (3d. Cir. 2007) ("Because Appellant has no due process right to any particular security classification . . . federal habeas relief is unavailable"); *Rodriguez-Leon v. Zickefoose*, Civ. Case No. 11-1172 (RBK), 2012 WL 32924 (D.N.J. January 3,2012) (petitioner has no liberty interest in avoiding assignment of a "Greatest Severity Public Safety Factor"; "Congress has delegated the authority to determine a prisoner's appropriate classification and place of confinement to the BOP"). Because Petitioner has not established a

due process violation in being assigned a Management Variable or being assigned to FDC Philadelphia, habeas relief is not warranted.

Neither has Petitioner alleged that the assignment of the instant Management Variable has caused her to suffer an atypical or significant hardship compared to the ordinary conditions of confinement that she might expect to experience in federal prison. *See Sandin*, 515 U.S. at 484 (liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (citations omitted); *see also Green*, 189 F.3d 460 (holding that alleged loss of furloughs and opportunities for other early release programs does not constitute a deprivation of "life's necessities"); *Pugliese*, 617 F.2d at 923 (federal inmates had no due process right to avoid their classification as Central Monitoring Cases, a designation that was likely to delay[] or preclude[] a prisoner from being favorably considered for furloughs, transfer, work releases, participation in community activities and even early parole" in the future because the inmates were not entitled to those freedoms as part of their convictions or sentences).

This petition differs greatly from the facts and issues raised in *Bronfman I*. In her amended petition in her initial habeas case, Petitioner pleaded that the allegedly wrongful application of a "Sex Offender" PSF, combined with allegedly being compelled to participate in sex offender treatment programming, constituted a "stigma plus"/Due Process rights violation by the BOP. *Bronfman I*, Am. Pet. ¶¶ 77-81, ECF No. 32; *see also Bronfman I*, Transcript of Oral Argument, ECF No. 35 (Oct. 4, 2023), at Tr. 51-52, 54-57 (Oral Argument Tr.). No analogous facts are pleaded in this petition, and neither does Petitioner raise a "stigma plus" claim in the instant petition.

Accordingly, the petition should be dismissed for failure to state a habeas claim.

**B.**      **Petitioner also has failed to state a claim under the Accardi Doctrine.**

Petitioner invokes the Accardi doctrine to argue that BOP must follow its own regulations, but has failed to do so here. Petition ¶¶ 100-03. "The Accardi doctrine is a judicially-evolved rule ensuring fairness in administrative proceedings by requiring that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency." *Clarry v. United States*, 85 F.3d 1041, 1047 (2d Cir. 1996) (cleaned up); *see also Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, No. 19-1778, 2020 WL 1320886, at *8 (2d Cir. Mar. 20, 2020) (noting the Supreme Court articulated in *Accardi* that federal "government agencies are generally required to follow their own regulations.").

"The crucial question is whether the alleged conduct of the [agency] deprived [the] petitioner of any of the rights guaranteed [her] by the statute or by the regulations issued pursuant thereto." *Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954); *Cardoza v. Pullen*, No. 3:22-cv-591 (SVN), 2022 WL 3212408, at *15 (D. Conn. Aug. 9, 2022); *see also Osorio v. Gallo*, No. 3:19-cv-151 (VAB), 2020 WL 1531300, at *4 (D. Conn. Mar. 31, 2020) (holding Accardi Doctrine did not apply).

Petitioner's Accardi claim fails because she has not identified any rights to which she is guaranteed. Nothing in P.S. 5100.08 guarantees or mandates that prisoners with low security points be placed in or transferred to low-level facilities. Instead, P.S. 5100.08 merely "establishes guidelines for designating inmates to institutions according to security level and for assigning custody classifications." *Fields v. Warden of Fed. Corr. Inst.-Bennettsville*, No. 5:20-cv-1101 (SAL) (KDW), 2020 WL 8620171, at *4 (D.S.C. Dec. 21, 2020), *report and recommendation adopted sub nom*, *Fields v. Warden of Fed. Corr. Inst.*, No. 5:20-cv-1101-JD, 2021 WL 694847 (D.S.C. Feb. 23, 2021).

While P.S. 5100.08 provides that inmates receive a point score that "is then matched with a commensurate security level institution," it goes onto explain that "[a]n inmate's security point score is not the only factor used in determining a commensurate security level." P.S. 5100.08, Ch. 1 at 2-3. Indeed, the program statement explains that "[t]he application of a [Public Safety Factor] or [Management Variable] could effect [sic] placement at either a higher or lower level institution than the specified point total indicates." *Id.* at 3.

Based on the discretionary nature of such classification, the Court in *Saleh* found no violation of the Accardi doctrine respecting BOP's classification and designation of the petitioner. *Saleh*, 2021 WL 1758711, at *2.[13] Accordingly, Petitioner's Accardi doctrine claim fails and the petition should be dismissed.

## IV.  There is no basis for ordering the other requested relief.

Finally, Petitioner's request for Respondents to be held in contempt, Petition ¶ 22 & page 28 (Prayer for Relief 4), is an extraordinary and baseless demand that should be rejected. Petitioner claims that BOP violated the "spirit" of an agreement the parties reached in *Bronfman I*. Petition ¶¶ 16, 83, 90. However, the parties in *Bronfman I* did not enter into a settlement agreement.

The parties' resolution of the *Bronfman I* petition turned on a narrow issue. In *Bronfman I*, the Petitioner sought to undo BOP's application of the "Sex Offender" PSF to Petitioner. Indeed, the Court's questions of the parties during its hearing on the Respondents' motion to

---

[13] The regulations do not even provide the prisoner with the opportunity for a hearing with respect to the application of a management variable; thus, Petitioner cannot claim the lack of a hearing as a deprivation of a guaranteed right. Nor can she use *Accardi* to obtain substantive relief that is not otherwise available. *See Tompkins v. Pullen*, No. 3:22-cv-339 (OAW), 2022 WL 3212368, at *15 (D. Conn. Aug. 9, 2022) (analyzing a different basis for habeas relief, noting that the only relief available by prevailing on an *Accardi* claim in the habeas petition was "another hearing").

dismiss in *Bronfman I* focused extensively on the potential stigma that may arise from a "Sex Offender" PSF, and, the potential ramifications of a prisoner allegedly being required to engage in sex offender treatment programming. *See, e.g.*, *Bronfman I*, Oral Argument Tr. 51-52, 54-55 (discussing *Vega v. Lantz*, 596 F.3d 77 (2d Cir. 2010) and the application of a PSF), 56-57 (discussing *Anthony A. v. Commissioner of Correction*, 326 Conn. 668 (2017) and BOP's FIT program). Ultimately, Petitioner agreed to withdraw her initial habeas case after stipulating that, indeed, that specific condition of confinement was resolved because BOP had removed the PSF. *Bronfman I*, Stipulation of Dismissal, ECF No. 40 ("The parties agree that, as of November 9, 2022, petitioner's Bureau of Prisons classification does not include a "sex offender" public safety factor.").

Here, Petitioner admits that the PSF has been removed, Petition ¶ 6, and, rather than being forced to **participate** in the FIT program, now alleges that she was forced to **withdraw** from it, *id.* ¶¶ 9-11, 14, 88. In short, the concerns that animated the habeas petition and the Court in *Bronfman I* are not present here. Particularly in light of these factors, it would be truly extraordinary for the Court to rule that Respondents violated a settlement agreement that does not exist.

As Petitioner herself has admitted, BOP can add a Management Variable to an inmate's file for a host of discretionary reasons. *See* Petition ¶¶ 17-18. Apart from unsupported speculation, *e.g.*, *id.* ¶¶ 12, 16, 19, 90, 94 (allegations made on or upon "information and belief"), there is nothing in the complaint to suggest that BOP applied this Management Variable to Petitioner as a substitute for the withdrawn PSF and/or in retaliation for Petitioner's initial habeas petition. Since Petitioner has failed to file an administrative remedy request and otherwise failed to exhaust her claim, there is no record of why BOP applied the Management Variable. As

previously stated, BOP declines to articulate in this filing (for the first time) its position respecting to the substance of Petitioner's claim that her Management Variable is incorrect.

## **CONCLUSION**

For the foregoing reasons, Respondent respectfully requests that the Court deny the relief sought by the Petitioner and dismiss this petition with prejudice.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Natalie N. Elicker*
NATALIE ELICKER (ct28458)
ASSISTANT U.S. ATTORNEY
157 Church Street, 25th Floor
New Haven, CT 06510
T: (203) 821-3700
F: (203) 773-5373
Natalie.Elicker@usdoj.gov